UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.T., an individual,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>THE COUNTY OF SAN DIEGO; and DOES 1–25, inclusive,<br><br>　　　　　　　　　　Defendants. | Case No.: 24-cv-00304-W-VET<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [DOC. 3]** |

Pending before the Court is the Defendant County of San Diego's (the "County") motion to dismiss ([Doc. 3], "Motion") Plaintiff D.T.'s ("Plaintiff") complaint ([Doc. 1], "Complaint") in its entirety. Plaintiff opposes ([Doc. 4], "Opposition") and Defendant has replied ([Doc. 5], "Reply").

The Court decides the matter on the papers submitted and without oral argument. *See* CivLR 7.1(d)(1). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

**I.    RELEVANT BACKGROUND**

This case arises from Plaintiff's sexual assault at the hands of his two cellmates while in the custody of the San Diego County Sheriff's Department at the George Bailey Detention Facility. (*Complaint* at ¶¶ 1, 48.) Plaintiff now brings this case against the County and Does 1–25 (whom Plaintiff alleges are "deputies, officers, and/or employees for the San Diego County Sheriff's Department . . . . [I]nclud[ing] employees in supervisory positions that participated in policy making/ratifying, training, and supervision of other employees."). (*Id*. at ¶ 7.)

Claim 1 asserts that the County and Does 1–25 violated Plaintiff's rights under the Eighth Amendment of the United States Constitution and sections 1 and 17 of Article 1 of

the California Constitution, in contravention of California Civil Code § 52.1 ("Bane Act"). (*Id*. at ¶¶ 49–68.)  The Court understands the complained of constitutional violations to essentially break down into four categories of conduct.  First, the Complaint alleges that the County and Does 1–25 intentionally misclassified Plaintiff (who was serving time for a "nonviolent financial crime" with "no history of prior violent or serious crime") and placed him in Unit 4B (a unit allegedly for "high-risk criminals such as murders and rapists") in a cell with fellow inmates Gianni Oliver (who was allegedly awaiting trial on, among other things, "five counts of attempted murder on a peace officer") and Vincent Salanardi (who was allegedly awaiting transfer to state prison after being convicted of "making criminal threats") (the "Misclassification Theory").  (*Id*. at ¶¶ 24–29.)  Second, the Complaint alleges that the County and Does 1–25 spent two months ignoring Plaintiff's numerous in-person complaints, cell transfer request forms, and Prison Rape Elimination Act ("PREA") forms wherein Plaintiff repeatedly reported that he was being sexually assaulted by his cellmates Oliver and Salanardi.  (*Id*. at ¶¶ 32–46, 53–54.)  Plaintiff further alleges that deputies would "sometimes walk by the cell as the abuse was occurring" but do nothing (collectively, the "Ignore Abuse Theory").  (*Id*. at ¶ 37.)  Ultimately, Oliver pled guilty to one count of sexual penetration by force and Salanardi pled guilty to one count of sexual battery by restraint.  (*Id*. at ¶ 48).  Third, the Complaint alleges that the County and Does 1–25 failed to properly train jail staff on how to prevent and respond to reports sexual assault at the George Bailey Detention Facility and further failed to supervise its staff accordingly (the "Failure to Train/Supervise Theory").  (*Id*. at ¶¶ 7, 56, 62, 75, 90).  Fourth, the Complaint alleges that the County and Does 1–25 failed to properly discipline the jail staff who in turn failed to prevent and respond to plaintiff's complaints of sexual assault (the "Failure to Discipline Theory").  (*Id*.)

      Next, Claims 2 and 3 assert Section 1983 violations against the County and the Doe defendants that were in policy-making positions under *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978) ("*Monell*") for: (1) the Failure to Train/Supervise Theory, (2) the Failure to Discipline Theory, and (3) for failing to have proper protocols in

place to prevent the Misclassification and Ignore Abuse Theories from happening (the "Lack of Protocols Theory"). (*Id*. at ¶¶ 69–97.)

The County moves to dismiss the Complaint, arguing that: (1) the identities of Does 1–25 have not been pled with the requisite specificity; (2) Plaintiff has not adequately alleged an "unconstitutional pattern or practice" for its *Monell* claims; (3) an inmate disagreeing with their classification cannot give rise to an Eighth Amendment violation for purposes of *Monell* liability; (4) the County and Doe defendants are immune from the Bane Act claims under California law; and (5) Plaintiff has not alleged that the County or Doe defendants interfered with his rights "intentionally," as required by the Bane Act.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) ("Rule 12"). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). Additionally, in evaluating the motion, the Court must assume the truth of all factual allegations and must "construe them in light most favorable to the nonmoving party." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002).

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) ("Rule 8"). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*,

550 U.S. at 570). While well-pled allegations in the complaint are assumed true, a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). .

### III.   DISCUSSION

#### A.   The Propriety of Doe Defendants in Federal Court

The County argues that Does 1–25 must be dismissed because the Complaint does not allege sufficient facts regarding the identity of the Does 1–25 or how each Doe was personally involved in allegedly violating Plaintiff's constitutional rights. (*Motion* at 17–18.)

While the Federal Rules of Civil Procedure do not explicitly allow for the naming of fictious or anonymous parties, "where the identity of the alleged defendant is not known prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Hernandez v. San Bernadino County*, 2023 WL 3432206, at *3 (C.D. Cal. January 26, 2023) (*quoting Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999)).

Still though, a complaint "must allege how each individual defendant directly participated in the violation of the plaintiff's rights." *Id*. at *3.  Thus, while a plaintiff "may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3 and so on . . . he must allege specific facts showing how each particular doe defendant violated his rights." *Keavney v. Cnty. of San Diego*, 2020 WL 4192286, at *4 (S.D. Cal. July 21, 2020).  The reason behind these requirements is to give named defendants like the County "crucial notice of the nature of the claims" at issue. *Mendoza v. County of San Bernadino*, 2020 WL 2066142, at *4 (C.D. Cal. February 21, 2020) (holding that the pleadings must be "sufficient to describe the involvement" of Doe defendants and to put "the County on notice of the nature of the claim against it.").

Here, Plaintiff alleges that Does 1–25 are "deputies, officers, and/or employees for the San Diego County Sheriff's Department . . . . [I]nclud[ing] employees in supervisory positions that participated in policy making/ratifying, training, and supervision of other employees." (*Complaint* at ¶ 7.)

On the one hand, Plaintiff has alleged that at least two officers at the George Bailey Detention Facility ("officer ARJIS # 6146 and officer ARJIS # 4773") received his PREA forms yet took no action. (*Id*. at ¶¶ 40, 42, 60). Similarly, the Complaint alleges that the "Watch Commander" received Plaintiff's June 30, 2021 cell transfer request form wherein Plaintiff reported that his cellmates were "touching" him "inappropriately." (*Id*. at ¶¶ 34, 60.) Additionally, Plaintiff alleges that on one occasion a group of officers "directly laughed at Plaintiff" when he attempted to give them one of his PREA forms (*Id*. at ¶¶ 44, 54, 57); on other occasions officers would "walk by the cells as the abuse was occurring" but "purposely ignore" the abuse (*Id*. ¶¶ 37); and that on another occasion an officer responded to Plaintiff's statement that he believed he had been improperly classified and placed in Unit 4B with "I guess you just fell through the cracks" (*Id*. at ¶ 33). Plaintiff also alleges that officers in the George Bailey Detention Facility's "classification department" misclassified Plaintiff when they originally placed him in Unit 4B (*Id*. at ¶ 26) and then subsequently ignored his July 13, 2021 cell transfer request form wherein Plaintiff indicated he was in physical danger (*Id*. at ¶ 41). Furthermore, the Complaint alleges that at least some of the Doe defendants had "final policymaking authority" and "made the decision to condone, promote, and/or allow" many of the complained of policies (or lack thereof). (*Id*. at ¶¶ 79, 94.)

On the other hand, at no point does Plaintiff bother to match up each Doe defendant with the "specific facts showing how each particular doe defendant violated his rights." *Keavney*, 2020 WL 4192286, at *4. While the Complaint's allegations are sufficient for the Court to infer that Does 1, 2, and 3 are the two officers who allegedly ignored Plaintiff's PREA forms (ARJIS # 6146 and 4473) and the "Watch Commander" from June 30, 2021, the allegations regarding how exactly Does 4–25 each violated Plaintiff's rights are entirely

insufficient. Plaintiff needs to be more specific about matching each Doe defendant numbered 4–25 with their respective conduct (e.g., Does 4–6 laughed at the PREA form, Does 7–9 walked by the cell and ignored the abuse, Does 10–12 made the alleged misclassifications in the classification department, Does 13–4 were the policymaking officials responsible for the Failure to Train/Supervise Theory, etc.).

Accordingly, Does 1–3 remain and are the two officers who allegedly ignored Plaintiff's PREA forms (ARJIS # 6146 and 4473) and the "Watch Commander" from June 30, 2021. Meanwhile, Does 4–25 are dismissed. The issue of leave to amend is addressed below.

### B. *Monell* Claims (Claims 2 and 3)

Next, the Court addresses the County's argument that Claims 2 and 3—*Monell* claims against the County and the Doe defendants in policymaking positions (Plaintiff does not specify which Does those are)—should be dismissed on the grounds that: (1) Plaintiff has not adequately alleged an "unconstitutional pattern or practice" for its *Monell* claims; and (2) an inmate disagreeing with their classification cannot give rise to an Eighth Amendment violation for purposes of *Monell* liability. (*Motion* at 11–17.)

Under *Monell v. Dep't of Soc. Servs. of City of New York*, municipalities such as the County cannot be held vicariously liable under Section 1983 for the actions of their employees. 436 U.S. 658, 692 (1978). Instead, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original).

Thus, to be liable under Section 1983 for a *Monell* claim, Plaintiff must show that either: (1) "a [municipal] employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity"; (2) "the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constated an act of official governmental policy"; or (3) "an official with final policy-making authority ratified a subordinate's unconstitutional

decision or action and the basis for it." *Mendoza*, 2020 WL 2066142, at *6 (*quoting Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)).

Additionally, "[a] *Monell* claim is, by definition, one brought against a public entity alone." *Hernandez*, 2023 WL 3432206, at *5 (*citing Monell*, 436 U.S. at 689 n.55); *see Patino v. Cnty. of Monterey*, 2023 WL 375349, at *4 (N.D. Cal. Jan. 24, 2023) ("*Monell* claims cannot be asserted against Moving Parties in their individual capacities. Any *Monell* claims against Moving Parties in their official capacities are duplicative of [plaintiff's] *Monell* claims against [the jail]. Accordingly, any *Monell* claims asserted against Moving Parties will be dismissed without leave to amend."); *see also Sanchez v. Cnty. of Los Angeles,* 2020 WL 9074714, at *4 (C.D. Cal. Apr. 28, 2020) ("a 'suit against Sheriff Villanueva in his official capacity is equivalent to a suit against County.'"). Accordingly, Plaintiff's *Monell* claims must be dismissed with respect to Does 1–25 with prejudice.

### 1. Lack of Protocols Theory

In its Motion, the County challenges the Lack of Protocols Theory with respect to its potential *Monell* liability on the grounds that: (1) the underlying Misclassification Theory simply does not amount to a violation of Plaintiff's constitutional rights and (2) the Plaintiff does not allege the existence of a longstanding custom or practice of allowing the underlying Misclassification and Ignore Abuse Theories to happen. (*Motion* at 12–13).

First, the Court acknowledges the cases cited by the County that stand for the proposition that an inmate disagreeing with their "classification does not give rise to a liberty interest." *E.g., Hernandez v. Johnston*, 833 F.2d 1316 (9th Cir. 1987). While it is true that "a prisoner has no constitutional right to a particular classification," *id*. 1318, a prisoner does have a constitutional right to prison officials "tak[ing] reasonable measures to guarantee the safety of the inmates," *Farmer v. Brennan* 511 U.S. 825, 832 (1994); *accord Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984). Indeed, a close reading of the cases cited by the County reveal that they all involve inmates suing because they were upset with their classification because of certain prison conditions/restrictions placed on

them by said classification, or their eligibility for certain programs—not inmates claiming their alleged misclassification was an example of the prison failing to take "reasonable measures to guarantee" inmate safety that directly lead to their physical injury. *See e.g*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (rejecting a claim that "prisoner classification and eligibility for rehabilitative programs in the federal system" invoked due process protections); *Hernandez*, 833 F.2d at 1317 (upholding grant of summary judgment against *pro se* inmate who alleged that being labeled as "violent" can give "rise to negative ongoing implications, that can have negative legal, social, psychological . . . effects on the person to whom they are attached" and believed that "due process" should be afforded to inmates before being labeled as such by prisons); *Hunter v. Welchert*, 372 F. App'x 778, 779 (9th Cir. 2010) (upholding grant of summary judgment against *pro se* inmate who alleged that his being placed in a single-person cell negatively impacted his mental health).

With this in mind, the County appears to misunderstand exactly what the constitutional violation Plaintiff complains of is—with respect to having a Lack of Protocols in place to prevent the Misclassification Theory. Plaintiff is *not* alleging that he had a right to a specific classification. Instead, he alleges that being classified into Unit 4B despite being a "nonviolent" inmate and put in a cell with "high-risk" inmates Oliver and Salanardi are examples of the County failing to take "reasonable measures to guarantee" inmate safety. (*See Complaint* at ¶¶ 14–15; *Opposition* at 21–22.)

Second, the Court addresses whether Plaintiff has sufficiently alleged whether the County having a Lack of Protocols in place to prevent the Misclassification and Ignore Abuse Theories from happening was the result of a "formal governmental policy or a longstanding practice or custom." In the absence of identifying a formal policy, "[a]n unconstitutional pattern or practice can be inferred from pervasive evidence of 'repeated constitutional violations' that are closely related to the alleged practices." *Rodriguez v. Orange Cnty.*, 2023 WL 6472000, at *4 (S.D. Cal. Oct. 4, 2023) (Whelan, J.) (*quoting Gillette v. Delmore*, 979 F.2d at 1349).

To that end, the Complaint includes numerous examples of other inmates being assaulted as a result of alleged classification errors by the County, for instance: (1) *Dunsmore et al. v. San Diego County Sheriff's Department et al.*, 20-cv-406-AJB-DDL (S.D. Cal. 2020), which alleged that two "low-level" offenders in the County's custody were murdered by their cellmates after classification errors led to them being placed in cells with "violent individuals" (*see Complaint* at ¶ 16); (2) *Frost v. County of San Diego*, 21-cv-1903-L-AGS (S.D. Cal. 2021), which alleged that a transgender woman was assaulted by her cellmates after the County placed her in a cell with men (*see id.* ¶ 17); (3) *Lucas v. County of San Diego et al.*, 20-cv-1735-CAB-JLB (S.D. Cal. 2020), which alleged that the plaintiff, a "lower-level offender[]," was placed in a cell with a mentally ill inmate—who then assaulted the plaintiff—due to a classification error by the County (*see id.* at ¶ 18); and (4) a 2019 incident in which Plaintiff alleges that a 70-year-old man, who had been previously designated as "Keep Separate All," was put in a cell with and murdered by gang member nicknamed "Evil" due to a classification error by the County (*see id.* at ¶ 16).

Similarly, Plaintiff points to a number of reports of sexual assaults in the County's jails in an attempt to show that the County has a "practice or custom" of allowing the Ignore Abuse Theory to happen. (*Id.* at ¶ 20.) To wit, Plaintiff alleges that from 2019 to 2021, there were 126 reports of inmate-on-inmate sexual assault in the County's jails—of which 3 were sustained, 21 were determined to be unfounded, and 102 are either still under investigation or "could not be sufficiently substantiated (but were not unfounded)." (*Id.*)

In its Motion, the County argues that: (A) the Complaint's examples of other alleged classification errors cannot show a "longstanding custom or practice" of having a Lack of Protocols in place to prevent the Misclassification Theory because they are only examples of inmates being *assaulted* by their cellmates due to alleged classification errors, not *sexually* assaulted; and (B) the Complaint's examples of other inmates reporting sexual assault does not show a "longstanding custom or practice" of having a Lack of Protocols in place to prevent the Ignore Abuse Theory from happening because Plaintiff's own

allegations show that most of the reports ended up being unsubstantiated. (*Motion* at 13–16.)

On its first point, the Court disagrees with the County's hairsplitting argument that the examples provided in the Complaint cannot go towards establishing a "custom or practice" of having a Lack of Protocols in place to prevent the Misclassification Theory from happening simply because the Complaint's examples do not involve classification errors leading to *sexual* assault, just non-sexual assault. The Court does not see, nor does the County really explain, why Plaintiff's assault by his cellmates resulting from an alleged classification error is substantively different from the other assaults cited in the Complaint simply because Plaintiff's assault was sexual. The heart of Plaintiff's allegations on this point are that the County failed to take reasonable measures to guarantee his safety when it classified him in such a way that he was placed in a cell with Oliver and Salanardi, leading to his eventual assault. And the Complaint does point to a number of examples in recent years where inmates were also assaulted by their cellmates after similarly alleged classification errors by the County—similar enough to count as "'repeated constitutional violations' that are closely related to the alleged practice" Plaintiff complains off.

However, on the second point, the Court does not see how examples of other inmates reporting sexual assault shows a "longstanding custom or practice" of having a Lack of Protocols in place to prevent the Ignore Abuse Theory. As alleged, all 126 reports of inmate-on-inmate sexual assaults cited by Plaintiff were investigated by the County. The fact that the County's investigators were unable to substantiate many of the reports one way or the other does not show that the County has been "ignoring" abuse absent some additional factual allegations about the quality of those prior investigations (or lack thereof). Accordingly, Plaintiff has not sufficiently alleged that the County has a "custom or practice" of having a Lack of Protocols in place to prevent the Ignore Abuse Theory from happening.

## 2. Failure to Train/Supervise Theory

Next, the County argues that the Failure to Train/Supervise Theory must be dismissed because the Complaint does not allege that the County acted with "deliberate indifference" with respect to the Failure to Train/Supervise Theory. (*Motion* at 16.)

Courts permit *Monell* claims to proceed against municipalities under failure to adequately train theories "[i]n limited circumstances, [where] a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Keith v. City of San Diego*, 2023 WL 2347070, at *3 (S.D. Cal. Mar. 3, 2023) (*quoting Connick v. Thompson*, 563 U.S. 51, 61 (2011)). In such cases, plaintiffs are required to show that the municipality's allegedly inadequate training amounts to "deliberate indifference"— which is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id*. Because there is no vicarious or *respondeat superior* liability for municipalities under Section 1983, a *Monell* claim will only lie where policymakers were "on actual or constructive notice that a particular omission in their training program causes employees to violate citizens' constitutional rights." *Id*. Thus, " [a] *pattern of similar constitutional violations* by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id*. (emphasis added).

However, in some "narrow" circumstances, "the unconstitutional consequences of failing to train could be so patently obvious that a [municipality] could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64. Such "narrow" circumstances exist when, "in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio*, 489 U.S. at 390. Yet, courts are understandably hesitant to find such "narrow" circumstances, because such theories often "collapse[] into *respondeat superior*

liability"—which plainly does not exist under Section 1983. *Horton by Horton v. Cty. of Santa Maria*, 915 F.3d 592, 603 (9th Cir. 2019).

Here, Plaintiff points to his multiple complaints that were allegedly ignored by the County as a "pattern" of the County failing to properly respond to reports of sexual assault. (*Opposition* at 25–26; *see Complaint* at ¶¶ 33, 39–42, 60.) The County in turn argues back, claiming that a plaintiff cannot rely on their "own circumstances" to show a "pattern" of unconstitutional conduct.

To begin, a close reading of the cases cited by the County reveal that they do not stand for the proposition that plaintiffs can *never* rely on their own circumstances to establish a "pattern" of unconstitutional conduct, just that the allegations in those cases were not enough to establish a sufficient "pattern" of unconstitutional conduct. *See Trevino v. Gates*, 99 F.3d 911, 916 (9th Cir. 1996), holding modified by *Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) (granting summary judgment in favor of municipality on *Monell* claim arising out of a single incident—a police shooting); *Ramirez v. Las Vegas Metro. Police Dep't*, 22 F. App'x 828, 830 (9th Cir. 2001) ("[Plaintiff's] individual experience simply does not provide the duration, frequency, and consistency necessary to prove a municipal custom of deliberate indifference."); *Zoellner v. City of Arcata*, 2020 WL 6868830, at *2 (N.D. Cal. Nov. 23, 2020) (dismissing *Monell* claim against municipality where plaintiff only pointed to one incident—his own arrest—when trying to establish a "pattern" of constitutional violations); *Mitchell v. Cnty. of Contra Costa*, 2022 WL 526161, at *5 (N.D. Cal. Feb. 22, 2022) (same).

While the Ninth Circuit has not "established what number of similar incidents would be sufficient to constitute a custom or policy," the alleged practices do need to be so "widespread" as to put a municipality on "actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Keith*, 2023 WL 2347070, at *3. With this in mind, Plaintiff pointing to his two PREA forms and two cell transfer request forms that were allegedly ignored does *not* provide the "duration, frequency, and consistency" necessary to establish a "pattern" of the

County failing to train/supervise its jail staff regarding properly responding to reports of sexual assault that is "so widespread" as to put the County "on notice" of a deficiency in its training/supervising. Similarly, Plaintiff fails articulate how the County's current training/supervising regarding responding to sexual assault reports is so obviously inadequate and likely to lead to constitutional violations as to fit into the "narrow" exception theorized in *Connick*.

Accordingly, Plaintiff has not sufficiently alleged *Monell* liability against the County with respect to the Failure to Train/Supervise Theory.

### 3. Failure to Discipline Theory

Lastly, the County does not move to dismiss Plaintiff's *Monell* claims with respect to the Failure to Discipline Theory. (*See Motion* at 12.) *See also Bousman v. Cnty. of San Diego*, 2024 WL 1496220, at *9 (S.D. Cal. Apr. 5, 2024) (Whelan, J.) (citations omitted) ("*Monell* claims based on a municipalities' alleged failure to discipline its employees are 'best understood as a claim of ratification.'"). As such, the *Monell* claims remain against the County with respect to the Failure to Discipline Theory.

### C. Bane Act Claim (Claim 1)

The Bane Act creates civil liability for anyone who "interferes by threat, intimidation, or coercion . . . with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1. As such, courts typically require Bane Act plaintiffs to allege "(1) interference with or attempted interference with a state or federal constitutional or legal right, and (2) [that] the interference or attempted interference was by threats, intimidation, or coercion." *Sanchez*, 2020 WL 9074714, at *9 (quoting *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015)) (emphasis added).

Here, the Complaint alleges that the County and Does 1–25 violated Plaintiff's rights byway of the Misclassification, the Ignore Abuse, Failure to Train/Supervise, and Failure to Discipline Theories. (*Complaint* at ¶¶ 49–68.) The County moves to dismiss

this claim with respect to the Misclassification, the Ignore Abuse, and Failure to Train/Supervise Theories on the grounds that: (1) it and Does 1–25 have immunity under California law; and (2) Plaintiff does not allege an intentional constitutional violation by any of the defendants. (*Motion* at 9–11.) The County does not appear to move to dismiss the Bane Act claim with respect to the Failure to Discipline Theory. (*See id*.)

### 1. **State Law Immunity**

The County argues that California Government Code section 820.2—which states that "a public employee is not liable for an injury resulting from his act or omission . . . result[ing] [from] the exercise of the discretion vested in him"—immunizes the Doe defendants from Plaintiff's Bane Act claim "to the extent that Plaintiff's allegations are based on a County employee's policy-making decisions." (*Motion* at 10–11.) While California Government Code section 820.2 can provide a source of immunity to public employees making discretionary policy decisions, courts construe section 820.2 "narrowly" and reserve its immunity only for "*basic policy decisions* which have been expressly committed to coordinate branches of government, and as to which judicial interference would thus be unseemly." *Desoucy v. Cnty. of San Bernardino*, 2024 WL 3064089, at *13 (C.D. Cal. May 9, 2024) (emphasis in original) (citing *Johnson v. State*, 69 Cal. 2d 782, 789–90 (1968) and *M.D. v. County of San Bernardino*, 2023 WL 8895699, at *8 (C.D. Cal. Nov. 15, 2023)). Meaning that "[S]ection 820.2 immunity does not apply where a plaintiff 'challenges the implementation of existing policies, not the policies themselves'" and "[c]ourts in this circuit have declined to apply Section 820.2 immunity where defendants failed to follow or implement existing policies, including policies related to inmate classification." *Id*. (citing *Turano v. County of Alameda*, 2019 WL 501479, at *3 (N.D. Cal. Feb. 8, 2019) and *Alexander v. California Department of Corrections and Rehabilitation*, 2014 WL 7336668, at *1 (E.D. Cal. Dec. 24, 2014)). Additionally, when seeking section 820.2 immunity, the moving party must "identify a specific policy decision" that they made and show that they "consciously balance[ed] [the policy's] risks and advantages" in reaching their decision. *Id*. at 13–14

(citing *M.D.*, 2023 WL 8895699, at *9 and *Estate of Mann v. County of Stanislaus*, 2023 WL 3168512, at *3 (E.D. Cal. Apr. 28, 2023)).

Here, Plaintiff's Bane Act claim indeed challenges the implementation of existing policy, not just the policies themselves. For instance, with regards to the Misclassification Theory, Plaintiff alleges that the County had an existing policy in place to classify and house inmates according to their dangerousness level for safety reasons, but that the County and Doe defendants failed to follow or implement that existing policy when it allegedly misclassified Plaintiff. (*See Complaint* at ¶¶ 13–14 ["To determine the appropriate jail facility and housing unit, the COUNTY employs a classification process that considers factors such as an individual's current charges, prior criminal history, gang affiliation, race, mental health, and history of violence. This system is supposed to protect the safety of every incarcerated person in the COUNTY's custody. For example, a nonviolent first-time offender would be at risk if placed with serious violent criminals. . . ."].) Regarding the Ignore Abuse and Failure to Train/Supervise Theories, again Plaintiff's Bane Act claim alleges that the County had policies in place to respond to allegations of and prevent abuse, but that the County and Doe defendants failed to follow/implement those polices. (*See id*. at ¶¶ 57–59 ["A PREA complaint requires the COUNTY to immediately initiate a response. Rule 54040.12 in the Cal. Corrections Manual states that 'All allegations of sexual violence . . . shall be investigated and the findings documented in writing' . . . . If the inmate reports that he was a victim of sexual violence less than 72-hours post-incident, the jailer supervisor shall secure the alleged inmate suspect for potential forensic processing and the Sexual Assault Response Team/Sexual Assault Nurse Examiner shall be consulted to make a determination as to whether the inmate victim/inmate suspect should be taken for a forensic examination. Cal. Corrections Manual, Rule 54040.12.1. Even though Plaintiff reported that he was a victim of sexual violence less than 72-hours post incident, the County did not alert the Sexual Assault Response Team/Sexual Assault Nurse Examiner and no forensic examination occurred . . . ."].)

Additionally, in its Motion, the County fails to specifically identify the exact, discretionary policy decisions it believes the Doe defendants made, nor does it show how the Doe defendants "consciously balance[ed] [the] risks and advantages" of those policies—as is its burden.  (*See Motion* at 10–11.)

Accordingly, California Government Code section 820.2 does not afford immunity to any of the Doe defendants with respect to Plaintiff's Bane Act claim.

### 2. **Intentional Constitutional Violation**

To state a valid Bane Act claim, a plaintiff must allege that the defendant both interfered with (or attempted to interfere with) one of their constitutional rights, and said interference must have been intentional.  *E.g.*, Cal. Civ. Code § 52.1.

Here, the County argues that Plaintiff has not sufficiently identified a constitutional rights violation committed directly by the County.  (*Motion* at 9–10.)  Indeed, a Bane Act claim is not a *Monell* claim and a claim brought under the Bane Act directly against the County will only stand if Plaintiff alleges how "the County" itself violated his rights.  A review of the Complaint reveals that Plaintiff does not allege how the County itself violated the Bane Act with respect to the Misclassification, the Ignore Abuse, and Failure to Train/Supervise Theories—only how its employees allegedly did.  (*See Complaint* at ¶¶ 49–68.)  A point Plaintiff effectively concedes in its Opposition.  (*See Opposition* at 15 [emphasis added] ["Plaintiff simply needs to show that the County's *employees* [violated Plaintiff's rights].  The County will have *respondeat superior* liability for their employees' Bane Act violations"].)  However, Plaintiff is correct in its contention that the County still remains vicariously liable for the acts of its employees, i.e., the Doe defendants.  *E.g., Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002) ("California . . . has rejected the *Monell* rule and imposes liability on counties under the doctrine of respondeat superior for acts of county employees . . . .").

As for the Doe defendants, the Court is satisfied that Plaintiff has alleged facts sufficient to show a constitutional violation regarding the Misclassification, Ignore Abuse, and Failure to Train/Supervise Theories for purposes of the Bane Act claim.  To

wit, the Complaint alleges that at least some of the Doe defendants: (a) failed to take reasonable measures to guarantee Plaintiff's safety when he was allegedly misclassified and placed in a cell with Oliver and Salanardi (*Complaint* at ¶¶ 14–15, 26, 53); (b) ignored Plaintiff's repeated reports that he was being assaulted by his cell mates (*Id*. at ¶¶ 32–46, 53–54), and (c) failed to properly train and supervise jail staff on how to prevent and respond to reports of sexual assault at the George Bailey Detention Facility (*Id*. at ¶¶ 7, 56, 62, 75, 90). Other than conclusory assertions that Plaintiff's allegations somehow do "not necessarily amount to constitutional violations," the County fails to provide the Court with any authority that the above allegations fail to state violations of the Cruel and Unusual Punishment clauses of the U.S. and California Constitutions, as well as the Right to Safety Clause of the California Constitution. *See* U.S. CONST. amend. VIII; CAL. CONST. art. I., §§ 1, 17.

Lastly, the Court disagrees with the County's contention that the Complaint fails to allege that the Doe defendants acted intentionally when allegedly interfering with Plaintiff's constitutional rights via the Misclassification and Ignore Abuse Theories. To the contrary, the Complaint alleges that the Doe defendants "intentionally misclassify[ied]" Plaintiff (*Complaint* at ¶ 53) and "intentionally ignored" Plaintiffs numerous reports of his abuse (*id*. at ¶¶ 54–56).

However, regarding the Failure to Train/Supervise Theory, the County is correct that the Complaint fails to allege intentionality. (*See generally*, *id*. at ¶¶ 49–68.) And while many courts have held that liability exists under the Bane Act where government officials acted with "deliberate indifference" (i.e., "kn[ew] of and disregard[ed] a substantial risk to inmate health or safety"), Plaintiff has not sufficiently alleged that any of the Doe defendants knew of and disregarded any alleged training or supervision deficiencies. (*See supra* Section III(B)(2)). *See M.H. v. Cnty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013) (*citing Farmer*, 511 U.S. at 837).

Accordingly, Plaintiff's Bane Act claim must be dismissed against the Doe defendants with respect to the Failure to Train/Supervise Theory and dismissed against

1  the County with respect to its direct liability under all theories.  However, the Bane Act
2  claim remains against the Doe defendants (and against the County under vicarious
3  liability) with respect to the Misclassification and Ignore Abuse Theories.  Of course, as
4  discussed above, the problems with how Plaintiff has pled the identities of Does 4–25
5  remain.  However, Plaintiff's Bane Act remains under the Failure to Disciple Theory.

### D. Leave To Amend

In its Opposition, Plaintiff asks the Court for leave to amend the Complaint if the Motion is granted.  (*Opposition* at 28.)  Under Federal Rule of Civil Procedure 15(a)(2), courts "should freely give leave [to amend] when justice so requires."  Furthermore, leave to amend "should be granted with 'extreme liberty'" and only be denied when "it is clear . . . that the complaint could not be saved by any amendment."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009).

Considering this circuit's preference for permitting amendment where not futile, the Court cannot conclude that Plaintiff could not possibly allege additional facts to state valid *Monell* claims against the County regarding the Failure to Train/Supervise Theory and allegedly having a Lack of Protocols in place to prevent the Ignore Abuse Theory.  Accordingly, the Court grants leave to amend the *Monell* claims (Claims 2 and 3) against the County in those two respects.  However, amendment would be futile as to Plaintiff's *Monell* claims against the Doe defendants since *Monell* liability can only attach to entities.  Similarly, Plaintiff's Bane Act claim (Claim 1) against the County for direct (instead of vicarious) liability could possibly be amended to allege unconstitutional conduct committed directly by the County, as opposed to just by its employees, with respect to the Ignore Abuse and Misclassification Theories.  And Plaintiff could theoretically allege additional facts regarding intent and/or deliberate indifference to establish a Bane Act claim against the County and the Doe defendants under the Failure to Train/Supervise Theory.  Accordingly, the Court grants leave to amend the Bane Act claim (Claim 1) regarding direct liability against the County under the Ignore Abuse and Misclassification Theories, as well as against the County and Doe defendants regarding

the Failure to Train/Supervise Theories. Plaintiff also could allege additional facts regarding the identities of the Doe defendants. As such, the Court also grants Plaintiff leave to amend the Complaint with respect to the Doe defendants' identities.

If Plaintiff opts to amend his Complaint, the factual allegations in his amended complaint must be "consistent with" and may "not contradict the allegations in original complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

In summary, this Order holds that:

- Does 4–25 are dismissed with leave to amend.
- Claims 2 and 3 (*Monell* claims against the County and Doe defendants) must be dismissed with prejudice as to the Doe defendants. These claims must also be dismissed, with leave to amend, against the County regarding the Failure to Train/Supervise Theory and the alleged Lack of Protocols in place to prevent the Ignore Abuse Theory. However, these claims remain against the County under the Failure to Discipline Theory and for having a Lack of Protocols in place to prevent the Misclassification Theory.
- Claim 1 (Bane Act claim against the County and Doe defendants) must be dismissed, with leave to amend, against the Couty and Doe defendants as to the Failure to Train/Supervise Theory. The Claim must also be dismissed as to direct liability against the County under the Ignore Abuse and Misclassification Theories, with leave to amend. However, the claim remains against the Doe defendants directly and the County vicariously regarding the Ignore Abuse and Misclassification Theories. The claim also remains against the County and Doe defendants regarding the Failure to Discipline Theory.

### IV. CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion [Doc. 3].) Does 4–25 are dismissed **WITH LEAVE TO AMEND**. Claims 2 and 3 are dismissed **WITHOUT LEAVE TO AMEND** as to the Doe Defendants in

totality and **WITH LEAVE TO AMEND** against the County regarding the Failure to Train/Supervise Theory and the alleged Lack of Protocols in place to prevent the Ignore Abuse Theory.  Claims 2 and 3 remain against the County under the Failure to Discipline Theory and for having a Lack of Protocols in place to prevent the Misclassification Theory.  Claim 1 is dismissed **WITH LEAVE TO AMEND** against the County and Doe defendants under the Failure to Train/Supervise Theory and against the County for direct liability under the Ignore Abuse and Misclassification Theories.  However, Claim 1 remains directly against the Doe defendants and vicariously against the County regarding the Ignore Abuse and Misclassification Theories.  Claim 1 also remains in against the County and Doe defendants regarding the Failure to Discipline Theory.

**IT IS SO ORDERED**

Dated:  September 19, 2024

Hon. Thomas J. Whelan
United States District Judge